IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REVIVE RX, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-798-K |
| | § | |
| REED HOELSCHER, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Reed Hoelscher's Motion to Dismiss and Brief in Support (the "Motion") (Doc. No. 18), Plaintiff Revive RX, LLC's Response in Opposition to the Motion (the "Response") (Doc. No. 22), Defendant Reed Hoelscher's Reply in Support of the Motion (the "Reply") (Doc. No. 28), and Plaintiff Revive RX, LLC's Verified Original Complaint and Application for Preliminary and Permanent Injunctive Relief (the "Complaint") (Doc. No. 1). Having carefully considered the Motion, the Response, the Reply, and the Complaint, as well as the applicable law and the relevant portions of the record, the Court finds that Plaintiff Revive RX, LLC has alleged sufficient facts to avoid dismissal under Federal Rule of Civil Procedure 12(b)(6). Accordingly, the Court **DENIES** Defendant's Motion in its entirety.

## I.    Factual Background

Plaintiff Revive RX, LLC is a compounding pharmacy that provides "customized

1

medications." Compl. at 5, ¶14. Plaintiff focuses its business on compounding weight loss medications, including semaglutide and tirzepatide. *Id.* at 5, ¶15. A key component of Plaintiff's business model is its sales team. Specifically, Plaintiff's sales team markets Plaintiff's services to "specialized medical practices" that prescribe compounded medicine. *Id.* at 6, ¶18. These specialized practices include, among others, hormone therapy clinics, weight loss clinics, and institutional urology practices. *Id.* Plaintiff partners with various clinics and fills prescriptions for compounded pharmaceuticals. *See id.* at 7, ¶21. Some of these clinics provide virtual services, known as "telehealth." *Id.* at 6–7, ¶18.

At the time of the alleged misconduct, Defendant Reed Hoelscher was Plaintiff's Director of Commercial Strategy and Business Development, or "Sales Director." *Id.* at 7, ¶20. Defendant's main objective as Sales Director "was to drive revenue through prescriptions filled." *Id.* at 7, ¶21. "Defendant worked to educate physicians and clinics about the high-quality nature of [Plaintiff's] operations, thereby increasing clinic/physician adoption and driving patient prescription volume." *Id.* Defendant's duties as Sales Director included, among others, "[i]mplementing strategies to maximize [Plaintiff's] growth potential in the industry," "[c]ultivating strategic partnerships to drive business development," and "[g]rowing and maintaining strong relationships with key [] clients, providers, and partners[.]" *Id.* Defendant received a significant portion of his compensation through "commissions on revenue from prescriptions written by those clinics/physicians assigned to him[.]" *Id.* at 8, ¶24.

While working for Plaintiff, Defendant had access to information that Plaintiff claims is confidential, including data regarding relationships with vendors, physicians, and clinics, business partnerships, and Plaintiff's costs for "active pharmaceutical ingredients ("APIs")." *Id.* at 8, ¶22; 6, ¶17. Plaintiff incurred these API costs by "sourc[ing] raw pharmaceutical components from FDA-registered drug suppliers or other compounding wholesalers that specialize in providing high-quality [APIs]." *Id.* at 6, ¶17. Plaintiff alleges that this information is "highly [] confidential." *Id.*

Defendant was bound by an Employment Agreement (*see* Doc. No. 1-1 at 10–19) that included non-compete and non-solicit restrictions. *Id.* at 10–11, ¶¶28–33. However, Plaintiff alleges that Defendant "secretly created—and [ran]—an interconnected web of competing business entities. These entities were operating in *direct competition* with [Plaintiff] by diverting patient prescriptions and associated revenue elsewhere." *Id.* at 12, ¶35 (emphasis original). Plaintiff further alleges that "Defendant—while employed by [Plaintiff], acted as an owner, operator, or agent of multiple telehealth/wellness companies that directed patients to care providers who wrote prescriptions filled by **competing pharmacies**." *Id.* at 14, ¶40 (emphasis original). Plaintiff alleges that Defendant conspired with Paul Hoelscher, Plaintiff's former CEO and Defendant's father, to illicitly divert business away from Plaintiff. *Id.* at 20, ¶61.

Plaintiff asserts numerous claims against Defendant. *See id.* at 22–39, ¶¶70–160. Defendant filed the present Motion, to which Plaintiff filed its Response and Defendant filed his Reply. Therefore, the Motion is now ripe for determination.

## II.    Legal Standard

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must determine whether the plaintiff has sufficiently stated a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If a plaintiff pleads facts which allow the court to reasonably infer that the defendant is liable for the alleged misconduct, the claim is facially plausible. *See id.* The court must presume all well-pleaded facts in the complaint to be true, and it must resolve any ambiguities or doubts regarding the sufficiency of the claims in plaintiff's favor. *Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

## III.    Analysis

Defendant argues that dismissal is required because Plaintiff fails to state plausible claims for relief. For the following reasons, the Court finds that Plaintiff pleads enough factual allegations to meet the threshold of facial plausibility and avoid dismissal. Accordingly, the Court **DENIES** Defendant's Motion in its entirety.

### A.    Ratification Defense

Throughout the Motion, Defendant argues that Plaintiff cannot assert its claims because it ratified Defendant's alleged misconduct through its CEO and Defendant's father, Paul Hoelscher. *See* Mot. to Dismiss at 8. Defendant argues that "[Plaintiff's] pleadings concerning Paul Hoelscher confirm that he was fully aware of [Defendant's]

activities, fully approved of [Defendant's] continuing to engage in those activities, and as [Plaintiff's] CEO, *ratified* [Plaintiff's] approval of [Defendant's] activities[.]" *Id.* (emphasis added). Defendant also argues that Plaintiff's Complaint "support[s] the defense of quasi-estoppel." *Id.*

Ratification is an affirmative defense upon which Defendant holds the burden of proof. *Karnes v. Fleming*, Civ. Action No. H-07-0620, 2007 WL 4191894, at *3 (S.D. Tex. Nov. 21, 2007). On this record and at this stage of the case, the Court does not find that Defendant is entitled to dismissal on his ratification and quasi-estoppel defenses. *See Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) (quoting 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d. ed. 2021)) (for defendant to obtain Rule 12(b)(6) dismissal on an affirmative defense, "it must be apparent from 'the plaintiff's own allegations' that a defense is fatal to the claim").

### B.    Federal Rule of Civil Procedure 9(b)

Defendant argues that Plaintiff fails to sufficiently plead its breach of fiduciary duty and civil conspiracy claims because those claims are based on fraudulent conduct and Plaintiff did not plead sufficient factual allegations to satisfy the requirements of Federal Rule of Civil Procedure 9(b). *See* Mot. to Dismiss at 9–11. In response, Plaintiff argues that Rule 9(b)'s stringent pleading standard does not apply to these claims because they are not based on fraud. *See* Resp. at 14–15.

To prove a fraud claim under Texas law, a plaintiff must prove multiple

elements, including that the speaker who made the alleged misrepresentation made it "with the intention to *induce the plaintiff's reliance*[.]" *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 241 F. Supp. 3d 737, 764 (N.D. Tex. 2017) (Boyle, J.) (quoting *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (emphasis added). In some cases, a breach of fiduciary duty claim can be subject to Rule 9(b)'s heightened standard if the alleged breach includes allegations of fraudulent conduct. *See Tigue Inv. Co., Ltd. v. Chase Bank of Texas, N.A.*, Civ. Action No. 3:03-CV-2490-N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004) (Godbey, J.).

The Court finds that, for purposes of determining the Motion, Plaintiff's breach of fiduciary duty and civil conspiracy claims are not subject to Rule 9(b)'s heightened pleading standard. Plaintiff does not allege that Defendant induced Plaintiff to rely on fraudulent conduct. Rather, the Court agrees with Plaintiff that it "is not claiming that Defendant defrauded [Plaintiff]. Instead, [Plaintiff] is claiming that Defendant hid [his] scheme altogether." Resp. at 14. As such, these claims are subject to the standard set forth in *Twombly*, not Rule 9(b). *See Twombly,* 550 U.S. at 570.

The Court finds that Plaintiff has alleged sufficient facts to state plausible claims for breach of fiduciary duty and civil conspiracy under Rule 12(b)(6). *See id.* Accordingly, the Court **DENIES** the Motion as to these claims.

### C.    Non-Compete and Non-Solicit Provisions

Defendant further argues that Plaintiff's claims for breach of contract related to the (1) non-compete provision and the (2) non-solicit provision contained in the

Employment Agreement must be dismissed because the provisions are overbroad and unreasonable. *See* Mot. to Dismiss at 14–16, 18–19; *see also* Doc. No. 1-1 at 15–17 (Defendant's Employment Agreement).

The Court first addresses the non-compete provision contained in the Employment Agreement. *See* Doc. No. 1-1 at 16. "Reasonable covenants not to compete serve the legitimate business interest of preventing departing employees from 'using the business contacts and rapport established' during their employment to take the employer's clients with them when they leave." *D'Onofrio v. Vacation Publ'ns. Inc.*, 888 F.3d 197, 211 (5th Cir. 2018) (quoting *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 387 (Tex. 1991)). "To be enforceable under Texas law, a non-compete covenant must include 'limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the good will or other business interest' of the employer." *DeWolff, Boberg & Assocs., Inc. v. Clark*, Civ. Action No. 3:22-CV-2489-K, 2023 WL 5437665, at *3 (N.D. Tex. Aug. 23, 2023) (Kinkeade, J.) (quoting Tex. Bus. & Com. Code § 15.50(a)). Courts in this circuit have found non-compete provisions that "amount to industry-wide exclusions" unreasonable. *D'Onofrio*, 888 F.3d at 211 (quoting *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 654 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)); *see also Accruent, LLC v. Short*, Civ. Action No. 1:17-CV-858-RP, 2018 WL 297614, at *6 (W.D. Tex. Jan. 4, 2018) (non-compete provisions "barring an employee from working for a competitor in *any* capacity are invalid").

Here, the non-compete provision states that, for a year after termination from employment with Plaintiff, Defendant could not "work or provide services, *in any capacity*, anywhere in the Restricted Area, whether as an employee, independent contractor or otherwise, with or without compensation, to any . . . competitor of [Plaintiff] regarding all or any portion of the business of [Plaintiff]." Doc. No. 1-1 at 16 (emphasis added). This covenant contains time and geographical limitations but does not contain any scope of activity limitation that specifies the type of work Defendant could or could not do. *See* TEX. BUS. & COM. CODE § 15.50(a). The Court finds that, under well-established law, this "in any capacity" language "amounts to [an] industry-wide exclusion[]" such that the non-compete provision is "overbroad and unreasonable" as written. *D'Onofrio*, 888 F.3d at 211. While the Court takes issue with other aspects of the non-compete provision, the Court rests on the foregoing analysis in finding the provision unreasonable as written.

A similar analysis applies to non-solicit provisions. *See Peat Marwick*, 818 S.W.2d at 387–88 (provision restricting solicitation of any client, regardless of prior contact or whether client came before or after termination, found unreasonable); *see also DeWolff, Boberg & Associates, Inc. v. Clark*, Civ. Action No. 3:20-CV-3649-L, 2022 WL 4589161, at *9 (N.D. Tex. Sept. 29, 2022) (Lindsay, J.) (finding non-solicitation provision that applied to all clients, regardless of former employee's contact with said clients, overbroad and unenforceable); *Marquis Software Sols., Inc. v. Robb*, Civ. Action No. 3:20-CV-0372-B, 2020 WL 955901, at *8 (N.D. Tex. Feb. 27, 2020) (Boyle, J.) (non-solicit

provision prohibiting contact with all customers "likely unreasonable").

Here, the non-solicit provision states that Defendant could not "solicit . . . *any* client, customer, prospective customer, vendor, contractor, supplier or other business partner of [Plaintiff][.]" Doc. No. 1-1 at 16 (emphasis added). This unlimited restriction on solicitation is the type of restriction found unreasonable in this circuit. *See Marquis Software*, 2020 WL 955901, at *8. Accordingly, the Court finds that the non-solicit provision is unreasonable as written. Therefore, both the non-compete and non-solicit provisions in the Employment Agreement are unreasonable as written.

However, the Court also finds that dismissal of Plaintiff's breach of contract claims as to the non-compete and non-solicit provisions is not appropriate at this stage. *See Clark*, 2023 WL 5437665, at *3 (citing *Pethick*, 2022 WL 4589161, at *9) ("despite finding the covenant[s] 'overly broad and unenforceable,' the court determined that dismissal was 'premature'"). Defendant's Motion briefly mentions reformation. *See* Mot. to Dismiss at 16. Plaintiff's Response mentions reformation insofar as it argues that dismissal at this stage is unwarranted regardless of enforceability. *See* Resp. at 15–16. The briefing on the reformation issue is insufficient and Defendant did not otherwise show that Plaintiff cannot recover as a matter of law "even under a noncompete [or non-solicit] covenant that has been reformed." *Orthoflex, Inc. v. Thermotek, Inc.*, Civ. Action No. 3:11-CV-0870-D, 2011 WL 5879330, at *1 (N.D. Tex. Nov. 23, 2011) (Fitzwater, C.J.). At the dismissal stage of this case, the Court does not decide whether Plaintiff could still recover on its breach of contract claims if the

provisions were reformed or if reformation is even appropriate at all.

For the foregoing reasons, the Court **DENIES** the Motion as to Plaintiff's claims for breach of the non-compete and non-solicit provisions.

### D.    Unjust Enrichment

Defendant also argues that Plaintiff's claim for unjust enrichment should be dismissed because unjust enrichment is not an independent claim under Texas law. Mot. to Dismiss at 25. However, courts in Texas are split as to whether unjust enrichment can serve as an independent cause of action. *See Elias v. Pilo*, 781 Fed. Appx. 336, 338 at n. 3 (5th Cir. 2019) (documenting disagreement among Texas appellate courts). The Court does not decide this issue today but instead will treat it as a claim for purposes of determining the Motion. *See Prime Hydration LLC v. Garcia*, Civ. Action No. 3:24-CV-1260-L, 2025 WL 963361, at *11 (N.D. Tex. Mar. 31, 2025) (Lindsay, J.) (treating unjust enrichment as independent claim for purposes of determining motion to dismiss).

The Court finds that Plaintiff has pleaded sufficient factual allegations to state a plausible claim for unjust enrichment. *See Twombly*, 550 U.S. at 570. Accordingly, the Court **DENIES** the Motion as to Plaintiff's unjust enrichment claim.

### E.    Remaining Claims

Defendant moves to dismiss three other claims: breach of the Employment Agreement's "exclusivity" provision, violation of the DTSA, and violation of the TUTSA. *See* Mot. to Dismiss at 11–12, 19–24. The Court finds that Plaintiff has stated

a plausible claim for relief on these claims. *See Twombly*, 550 U.S. at 570. Accordingly, the Court likewise **DENIES** the Motion as to these claims.

## IV.   Conclusion

For the foregoing reasons, and having taken Plaintiff's well-pleaded facts as true and viewing such facts in the light most favorable to Plaintiff, as the Court must do at this stage, the Court finds that Plaintiff has pleaded enough factual allegations to avoid dismissal under Rule 12(b)(6). Accordingly, the Court **DENIES** Defendant's Motion in its entirety.

**SO ORDERED.**

Signed March 10th, 2026.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

11